UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFERY THURMAN, | ) |
| Petitioner, | ) |
| v. | ) No. 4:11-CV-13-DDN |
| JEFF NORMAN, | ) |
| Respondent. | ) |

**MEMORANDUM**

This action is before the court upon the petition of Missouri state prisoner Jeffery Thurman for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 11.) For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I. BACKGROUND**

On October 18, 2007, a jury in the Circuit Court of Washington County found petitioner guilty of first degree child molestation and first degree statutory sodomy. (Doc. 8, Ex. A at 93.) On January 7, 2008, the circuit court sentenced petitioner to fifteen years imprisonment for first degree child molestation and fifty years for first degree statutory sodomy. (Id. at 94.) The circuit court further ordered the sentences to be served consecutively. (Id.) On December 23, 2008, the Missouri Court of Appeals affirmed the judgment on direct appeal. (Id., Ex. D); State v. Thurman, 272 S.W.3d 489 (Mo. Ct. App. 2008).

On March 31, 2009, petitioner filed in the circuit court a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15. (Doc. 8, Ex. F at 5-41.) On June 30, 2009, with the assistance of appointed counsel, petitioner filed an amended motion for post-conviction relief. (Id. at 42-55.) The circuit court denied petitioner's motion on October 14, 2009. (Id. at 56-66.) On September 7, 2010, the Missouri Court of Appeals affirmed the circuit court's denial of the motion. (Id., Ex. I.); Thurman v. State, 320 S.W.3d 206 (Mo. Ct. App. 2010).

On January 3, 2011, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.)

In denying petitioner's direct appeal, the Missouri Court of Appeals described the facts, viewed in the light most favorable to the verdict, as follows:

> In December 2000, [petitioner] was living in Irondale with his wife (Mother) and two of his wife's children, an eight-year-old boy and ten-year-old Victim. Victim testified at trial that her mother had gone on vacation to Florida while she and her brother stayed with [petitioner]. It was the first time Victim had not been with one of her natural parents. Victim was in her bedroom at night and felt scared by the wind rattling her windows. She went downstairs where [petitioner] was lying on the couch watching television and told him that she missed her mom. [Petitioner] told Victim to lie with him on the couch.
>
> Victim followed [petitioner's] instruction, lying with her back to [petitioner's] stomach. After a couple of minutes, Victim felt [petitioner's] hand go up her shirt, rubbing her breasts under her shirt. Then [petitioner] put his other hand down Victim's pants, rubbing her vagina under her clothing. Victim testified that [petitioner] did not say anything to her, but was breathing hard in her ear. Victim said she wondered why [petitioner] was doing this because it was something that her parents were supposed to do with each other. This continued for a few minutes until Victim got up from the couch, said, "I'm not my mom," and went upstairs to bed.
>
> Victim testified that although [petitioner's] actions bothered her, she did not know it was important to tell anyone. About two years later, when Victim was at a friend's house and one of the girls there began talking about how she had been molested, Victim told them that the same thing had happened to her. Her friend's mother took Victim home so she could tell her mother and a police report could be made. When Mother heard Victim's accusations, however, she would not allow Victim to go to the police because she was afraid the State would take her children away from her. Victim's mother was separated from [petitioner] at that time, but not divorced yet.
>
> A couple of years later, Victim felt depressed and was contemplating suicide. She testified that she felt damaged, which stemmed from [petitioner's] actions toward her. Mother took Victim to counseling. Victim told her counselor that [petitioner] had abused her. The counselor was required by law to report the allegation of abuse to the Children's Division (formerly Division of Family Services).
>
> Emily Goyea (Ms. Goyea), a child abuse and neglect hotline investigator with the Children's Division in Franklin County, testified that the Children's Division received information regarding Victim on December 9, 2005. Ms. Goyea interviewed Victim and confirmed that she had in fact disclosed abuse to her counselor. Ms. Goyea contacted law enforcement and referred Victim to the Child Advocacy Center for a forensic interview by a law enforcement agent. During the forensic interview, Victim stated that [petitioner] had abused her at their residence in Irondale when Mother was on a trip to Florida.

>        Law enforcement officers then interviewed [petitioner] at his residence. Officer Beverly Gillam (Officer Gillam), a special investigator for child abuse and neglect, testified that she advised [petitioner] of his Miranda rights, and [petitioner] agreed to speak with her. When Officer Gillam told [petitioner] of the allegations, he indicated disbelief and told her that he was never once alone with Victim during the three-year period they lived together. He further told the officer that Victim had stayed with her grandmother during the time Mother was in Florida. [Petitioner] also contacted Ms. Goyea by telephone on February 27, 2006, and denied Victim's allegations. [Petitioner] told Ms. Goyea that the allegations could not be true because Victim stayed with her grandmother during the time Mother was in Florida.
>
>        The officers contacted Victim's grandmother, who said that Victim did not stay with her. During trial, Victim's grandmother, Barbara Hernandez, who lived in St. Louis County, testified that Victim did not stay with her during the time Mother was in Florida. Victim's school social worker also testified that Victim did not miss any days of school during the time period at issue.
>
>        In addition to the incident that was the basis of the charged offense, Victim testified that [petitioner] touched her in a way she did not like when he used to make her dance with him, wrapping her legs around his hips while he held her buttocks and pulled her really close to him. Mother testified that this dancing appeared sexual and she told [petitioner] it was inappropriate. [Petitioner], however, would not always put Victim down. Additionally, Victim testified that [petitioner] would slap her buttocks sometimes, and [petitioner] had a rule that she had to kiss him on the lips "or he'd get mad." Victim further testified about a time when her family had to shower in the barn and [petitioner] would make her go out by herself while he watched her take a shower.
>
>        The jury found [petitioner] guilty of first-degree child molestation and first-degree statutory sodomy at the end of the one-day trial.

(Doc. 8, Ex. D at 2-5); <u>State v. Thurman</u>, 272 S.W.3d at 491-93).

## II.  PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges four grounds for relief in this habeas action:

(1)   The trial court erred in the guilt phase of his trial by permitting testimony showing petitioner's propensity for sexual misconduct.

(2)   The trial court erred in the sentencing phase of his trial by allowing testimony about his prior criminal charges that did not result in convictions.

(3)   The trial court erred in the sentencing phase of his trial by failing to declare a mistrial after hearsay testimony.

(4)   The trial court and appellate court erred in denying his motion for post-conviction relief without granting an evidentiary hearing.

(Doc. 1 at 20-30.)

Respondent contends that Grounds 1-3 are without merit and that Ground 4 is not cognizable for purposes of federal habeas review.  Respondent further contends that Grounds 2 and 3 are procedurally barred.

### III.  EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254.  See 28 U.S.C. § 2254(b)(1)(A).  A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  Given the limitation periods under Missouri law for asserting grounds for relief on direct appeal and in motions for post-conviction relief, no proper procedure for litigating his federal habeas claims now remains available to petitioner.  See Mo. Sup. Ct. R. 29.15(b) (post-conviction relief motion must be filed within 90 days after the mandate of the court of appeals affirming the judgment or sentence is filed; or, if no appeal is filed, within 180 days from the date the person is delivered to the Department of Corrections); Mo. Sup. Ct. R. 81.04(a) (10 days to file a notice of appeal after circuit court judgment is final).

Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the federal statutory requirement.  Rather, a petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts.  Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam).  If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court).

Petitioner raised Ground 1 at the trial level in his motion in limine and motion for a new trial and by objecting during his trial. (Doc. 8, Ex. A at 37-38, 74-90; Ex B at 16-19; Doc. 17 at 194, 245.)  He also presented Ground 1 to the Missouri Court of Appeals.  (Id., Ex. B at 12-22.)  Ground 1 is not procedurally barred.

Petitioner did not raise Grounds 2 and 3 at his trial.  However, he raised the grounds in his brief when he sought appellate review of his conviction.  (Id. at 23-33.) Because he failed to raise the grounds at his trial, the appellate court reviewed the

grounds for plain error resulting in manifest injustice rather than reviewing under the more lenient abuse of discretion standard.  (Id., Ex. D at 12.)  The Eighth Circuit is split on whether state appellate courts waive procedural default with plain error review, but the courts may freely choose to follow either of the lines of cases.  Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997); Mack v. Caspari, 92 F.3d 637, 641 (8th Cir. 1996).

Accordingly, the undersigned considers procedural default waived for Grounds 2 and 3 and reviews the grounds for plain error resulting in manifest injustice.

## IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Thaler v. Haynes, 130 S.Ct. 1171, 1174 (2010) (per curiam) (citation omitted).  This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted).  A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Thaler, 130 S.Ct. at 1174.

A state court's factual findings are presumed to be correct.  28 U.S.C. § 2254(e)(1); Wood v. Allen, 130 S.Ct. 841, 845 (2010).  Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief.  28 U.S.C. § 2254(e)(1); Wood, 130 S.Ct. at 845.

## V. EVIDENTIARY HEARING

Petitioner also requests an evidentiary hearing.  AEDPA provides that a court shall not hold an evidentiary hearing on a habeas corpus claim unless a petitioner shows that:

(A) the claim relies on--
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In each of his grounds, petitioner argues not that the state courts made unreasonable determinations of fact but that their decisions were contrary to clearly established federal law.  Further, state courts heard each of the grounds on the merits, and the grounds are properly reviewed under § 2254(d)(1).  As stated above, review is limited to the records before the state courts and granting petitioner's request for an evidentiary hearing would be in derogation of this principle.  Cullen, 131 S.Ct. at 1398, 1401.  Accordingly, petitioner's request for an evidentiary hearing is denied.

## VI.  DISCUSSION

### A. Ground 1

Petitioner argues that the trial court abused its discretion by allowing the victim and her mother to testify about petitioner's inappropriate sexual behavior during the guilt phase of his trial.  According to petitioner, the prosecution presented the testimony to show his propensity to perform sexual acts with the victim.

Under AEDPA habeas review, to determine whether a state court committed error by admitting evidence, courts consider whether the state court's decision was an objectively unreasonable application of the Due Process Clause rather than whether the evidence was properly admitted under state law.  Middleton v. Roper, 498 F.3d 812, 820 (8th Cir. 2007).  If such error is shown, petitioners must further show that the asserted error was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair."  Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987).  To meet this burden, petitioners must show a reasonable probability that the verdict would have been different absent the asserted error.  Id.

Under Missouri law, trial courts may not admit evidence of prior criminal acts to prove a defendant's propensity to commit a presently charged crime. State v. Ellison, 239 S.W.3d 603, 606 (Mo. banc 2007). However, evidence of prior criminal acts is admissible if otherwise relevant and its probative value outweighs its prejudicial effect. Id. at 606-07. Specifically, in cases involving sexual abuse of children, Missouri courts admit evidence of prior sexual misconduct to show motive, identity, and common scheme or plan. State v. Bernard, 849 S.W.2d 10, 13 (Mo. banc 1993).

During the trial, over petitioner's motion in limine and objection, the court permitted the victim to testify about petitioner dancing with her inappropriately, slapping her buttocks, making a rule that she had to kiss on the lips, and watching her shower. (Doc. 17 at 195-197.) Later during the trial, again over petitioner's motion in limine and objection, the court permitted the victim's mother to testify also about petitioner's inappropriate dancing. (Id. at 245-46.) The appellate court found the challenged testimony relevant to show petitioner's motive and intent to commit the charged crimes and concluded that the trial court did not abuse its discretion by admitting the testimony. (Id. at 11.) Neither the trial court nor the appellate court unreasonably applied state evidentiary law. Therefore, petitioner cannot show an error of constitutional magnitude.

Even assuming an error of constitutional magnitude, petitioner fails to show a reasonable probability that the verdict would have been different. The prosecution charged petitioner with one count of first degree child molestation and one count of first degree statutory sodomy. Under Missouri law, first degree child molestation is defined as subjecting a person less than fourteen years old of age to sexual contact. Mo. Rev. Stat. § 566.067. First degree statutory sodomy is defined as subjecting a person less than fourteen years of age to deviate sexual intercourse. Mo. Rev. Stat. § 566.062. The victim's testimony supports these allegations. (Doc. 17 at 185-93.) Missouri law instructs that "[i]n sexual abuse cases, a complaining witness' testimony alone will sustain a conviction even if uncorroborated." State v. Dewitt, 924 S.W.2d 568, 570 (Mo. Ct. App. 1996) (citing State v. Sladek, 835 S.W.2d 308, 310 (Mo. banc 1992)); State v. Waddell, 164 S.W.3d 550, 553 (Mo. Ct. App. 2005). Therefore, the guilty verdicts rest on a substantial factual basis even without the challenged testimony.

In sum, petitioner fails to show an unreasonable application of the Due Process clause. Accordingly, Ground 1 is without merit.

**B. Grounds 2 and 3**

In Ground 2, petitioner argues that the trial court erred during the sentencing phase by admitting testimony from a police officer and the victim's mother about criminal charges that were later dropped without further proof that the criminal conduct occurred. In Ground 3, petitioner argues that the trial court erred during the sentencing phase by failing to declare sua sponte a mistrial when the victim's mother testified that petitioner placed his hands between her older daughter's legs. Petitioner argues that the testimony was hearsay which did not fall under any recognized exception.

Because petitioner failed to preserve Grounds 2 and 3 at the trial level, the appellate court reviewed the grounds under the plain error standard, which requires the appellate court to determine whether manifest injustice or a miscarriage of justice occurred, or whether the trial court's error was outcome determinative. (Doc. 8, Ex. D. at 12.) Courts finding that plain error review cures procedural default also review the state court decisions under the plain error standard. Hunter v. Bowersox, 172 F.3d 1016, 1023-24 (8th Cir. 1999); Sweet v. Delo, 125 F.3d at 1152; Hornbuckle v. Groose, 106 F.3d at 257.

During petitioner's sentencing phase, the victim's mother testified that petitioner had informed her that he had been previously charged with rape. (Doc. 17. at 419.) Subsequently, a police officer testified that she was also aware of this charge and discussed it with petitioner. (Id. at 423.) The victim's mother also testified about petitioner's sexual conduct with her older daughter. (Doc. 17 at 419-20.) The prosecution also presented a substantial amount of other evidence concerning petitioner's physical and mental domestic abuse and also his drug and alcohol abuse. (Id. at 409-18.)

The appellate court found that the trial court should not have admitted the challenged testimony regarding the dropped rape charge. (Doc. 8, Ex. D. at 12-14, 17.) The appellate court then considered the issue of whether a reasonable probability existed that "the jury would have imposed a lesser sentence but for the erroneously admitted evidence." (Id. at 14-18.) The appellate court noted the limited nature of the challenged testimony and reasoned that other evidence "overwhelmingly demonstrated [petitioner's] motive of sexual desire for Victim, and [petitioner's] brutality and intent to harm his wife and children." (Id. at 15.) The court concluded that trial court's errors did not prejudice petitioner. (Id. at 16, 18.)

As noted by the appellate court, review of the sentencing transcript indicates that the duration and import of the challenged testimony pales in comparison to the entirety of the evidence presented. The Missouri Court of Appeals did not err by deciding that the

admission of testimony concerning unproven criminal charges and hearsay evidence did not result in manifest injustice.

Accordingly, Grounds 2 and 3 are without merit.

**C. Ground 4**

In Ground 4, petitioner argues that the circuit court and the appellate court erred in denying his Rule 29.15 motion without granting an evidentiary hearing.

Habeas relief is available only where errors of a constitutional magnitude have occurred.  Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994).  The Constitution does not guarantee collateral post-conviction review.  Pennsylvania v. Finley, 481 U.S. 551, 557 (1987).  Nor does the Constitution guarantee the right to an evidentiary hearing during post-conviction relief proceedings.  Smith v. Lockhart, 882 F.2d 331, 334 (8th Cir. 1989).

Accordingly, Ground 4 is not a cognizable habeas claim.

### VII.  CONCLUSION

For the reasons stated above, the petition of Jeffery Thurman for a writ of habeas corpus is denied.  An appropriate Judgment Order is issued herewith.

From the record, the court concludes that petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(1)(B)(2).  Therefore, the court denies a certificate of appealability.

      /S/   David D. Noce      
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 9, 2013.